UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| U.S. BANK TRUST NATIONAL ASSOCIATION, in its capacity as owner trustee for LEGACY MORTGAGE ASSET TRUST 2021-GS1,<br><br>        Plaintiff<br><br>v.<br><br>FRANCIS A. FOLSOM,<br><br>        Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) No. 1:24-cv-00412-LEW<br>)<br>)<br>)<br>) |

**ORDER ON MOTION FOR SERVICE BY PUBLICATION AND
MOTION TO EXTEND TIME TO COMPLETE AND FILE SERVICE**

U.S. Bank Trust National Association, in its capacity as owner trustee for Legacy Mortgage Asset Trust 2021-GS1 (hereinafter U.S. Bank), filed a renewed motion to serve its foreclosure complaint upon Francis A. Folsom by publication (ECF No. 22), accompanied by the requisite affidavit and proposed order, following my denial of its first motion for failure to exhaust traditional methods of service, as well as a motion to extend time to complete and file that service by sixty (60) days (ECF No. 21). For the following reasons, both motions are granted.

### I. Legal Standard

"[T]he United States and Maine Constitutions require that, as a basic element of due process, any defendant against whom suit is commenced is entitled to notice reasonably calculated to give actual notice . . . ." *Gaeth v. Deacon*, 2009 ME 9, ¶ 23, 964 A.2d 621. Proper service of process provides that requisite notice. *See id.*

"Under Federal Rule of Civil Procedure 4(e), service may be accomplished by delivering a copy of the summons and the complaint to the individual personally, leaving a copy at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there, [or] delivering a copy to an agent authorized by appointment or by law to receive service of process." *Wells Fargo Bank, N.A. v. Dodge,* No. 2:22-cv-00412-LEW, 2024 WL 1309377, at *1 (D. Me. Mar. 27, 2024) (citing Fed. R. Civ. P. 4(e)(2)). "Service may also be accomplished by following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district [court] is located or where service is made." *Id.* at *1 (citing Fed. R. Civ. P. 4(e)(1)).

Maine law permits service by alternative means "on motion upon a showing that service cannot with due diligence be made by another prescribed method." Me. R. Civ. P. 4(g)(1). To satisfy that standard, the movant must submit "a draft, proposed order to provide the requested service by alternative means," containing the content specified in Rule 4(g)(2), as well as an affidavit showing that (1) the movant "has demonstrated due diligence in attempting to obtain personal service of process in a manner otherwise prescribed by Rule 4 or by applicable statute," (2) "[t]he identity and/or physical location of the person to be served cannot reasonably be ascertained, or is ascertainable but it appears the person is evading process," and that (3) "[t]he requested method and manner of service is reasonably calculated to provide actual notice of the pendency of the action to the party to be served and is the most practical manner of effecting notice of the suit." Me. R. Civ. P. 4(g)(1)-(2).

## II. Background

On November 27, 2024, U.S. Bank filed a complaint seeking the foreclosure and sale of a property located at 93 Hinkley Road, West Gardiner, ME 04345 (the "Property"). *See* Complaint (ECF No. 1) ¶¶ 30-31. Folsom originally secured the Property by a now-defaulted mortgage owned by U.S. Bank. *See id.* ¶¶ 10-11, 19-29.

On December 4, 2024, U.S. Bank provided Kevin Surette of We Serve Maine with a copy of the summons, complaint, and Rule 4 notice to serve Folsom at the Property, which was listed as his last known address. *See* Affidavit of Matthew Kelly (ECF No. 22-1) ¶ 3. Surette attempted to do so on December 13, 2024, but was unsuccessful because multiple vehicles blocked the Property's driveway and the path to the front door was obstructed by "excessive trash and debris" as well as a pallet with "keep out" and "do not enter" signs on it. *Id.* ¶ 4; *see generally* ECF No. 22-2.

Through LexisNexis Accurint/RISK searches, U.S. Bank discovered several phone numbers associated with Folsom and confirmed he still lives at the Property. *See* Kelly Aff. ¶¶ 5, 10-12. U.S. Bank attempted to reach Folsom by calling several of the identified phone numbers but was unsuccessful, and was unable to find any other contact information through social media and Google searches. *See id.* ¶¶ 10-11, 13.

U.S. Bank also sent Folsom a copy of the complaint and Local Rule 7.1 disclosure statement by regular mail, and a notice of the right to cure by both regular and certified mail, to the Property's address. *See id.* ¶¶ 6, 9. Only the notice sent by certified mail was returned to counsel's office, and it bore a sticker that read "RETURN TO SENDER - UNCLAIMED - UNABLE TO FORWARD." *Id.* ¶¶ 7-9.

3

On May 8, 2025, Harry Doughty, the Kennebec County Sheriff's Deputy, attempted service at the Property on behalf of U.S. Bank but was unable to reach the door because of the debris. *See id.* ¶¶ 14-15. Deputy Doughty spoke to Folsom over the phone (at a number on which U.S. Bank had left a voicemail) and confirmed he lives at the Property. *See id.* ¶ 15. Folsom told Deputy Doughty that he would call him back to accept service but then stopped responding to calls. *See id.* ¶¶ 15-16.

Deputy Doughty subsequently discovered that Folsom had moved to an unspecified nursing home in Lewiston for health reasons. *See id.* ¶ 17. U.S. Bank hired Surette to ascertain Folsom's exact location, which research revealed was Russell Park Rehabilitation & Living Center. *See id.* ¶ 18. When U.S. Bank attempted to serve Folsom at Russell Park, the nursing home staff confirmed Folsom was no longer there but would not release any other information. *See id.* ¶ 19.

On July 9, 2025, counsel for U.S. Bank called Folsom using the same number with which Deputy Doughty had successfully reached him, but there was no answer. *See id.* ¶ 20. Then on July 14, 2025, Surette made a final attempt to serve Folsom at the Property and reached the side door but received no response. *See id.* ¶ 21.

### III. Discussion

U.S. Bank contends it should be permitted to serve Folsom by alternative means—specifically, by publication—because it has made numerous attempts to serve him traditionally and further similar efforts are unlikely to be successful because he is evading service. *See id.* ¶ 24; Motion for Service by Publication at 1-3.

On this record, I agree. U.S. Bank made four attempts to serve Folsom in person (thrice at the Property and once at the Lewiston nursing home), searched LexisNexis Accurint/RISK, Google, and social media for additional contact information or addresses associated with him, called multiple phone numbers dredged up by those searches (and left a voicemail on what appears to be Folsom's direct number), and sent physical copies of the complaint, disclosure statement, and notice of the right to cure by mail to the Property. Critically, Folsom's phone conversation with Deputy Doughty in May both confirmed that he lives at the Property and provided him with actual notice of this matter (although he may also have been put on actual notice by the voicemail U.S. Bank left for him earlier).

I therefore find that U.S. Bank's efforts to date, coupled with Folsom's actual notice of this suit and continued avoidance of service, demonstrates the requisite due diligence and futility of further similar efforts to justify service by publication. *See* Me. R. Civ. P. 4(g)(1)(A)-(B); *MATSCO v. Brighton Family Dental, P.C.*, 597 F. Supp. 2d 158, 163 (D. Me. 2009) (explaining that the sufficiency of a plaintiff's attempts to effectuate service "depends on the factual circumstances of the case"). I likewise find good cause exists to grant U.S. Bank a sixty (60) day extension of time to complete and file service as to Folsom. *See* Fed. R. Civ. P. 6(b)(1)(A).

Although generally authorized in combination with other means of service, *see NewRez LLC v. Ochoa*, No. 2:23-cv-00251-LEW, 2024 WL 1071642, at *3 (D. Me. Mar. 12, 2024), I conclude service by publication in the *Kennebec Journal* alone is a reasonable measure of providing Folsom with notice of this suit considering

5

he appears to already have actual notice of it and copies of the complaint, summons, and notice to cure were mailed to him at the Property, *see* Me. R. Civ. P. 4(g)(1)(C).

## IV. Conclusion

Accordingly, U.S Bank's motion for service by publication and its motion to extend time to complete and file service are **GRANTED**. U.S. Bank shall serve Folsom by publication in accordance with Me. R. Civ. P. 4(g) and with the order for service by publication issued alongside this order. Finally, U.S. Bank shall complete and file service as to Folsom within sixty (60) days from the date of this order.

### *NOTICE*

*In accordance with Federal Rule of Civil Procedure 72(a), a party may serve and file an objection to this order within fourteen (14) days after being served with a copy thereof.*

*Failure to file a timely objection shall constitute a waiver of the right to review by the District Court and to any further appeal of this order.*

Dated: August 5, 2025

/s/ Karen Frink Wolf
United States Magistrate Judge